**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2013-95

UNITED STATES TAX COURT

RICHARD N. BROGAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15320-12S.                       Filed November 26, 2013.

Richard N. Brogan, pro se.

<u>Bryan J. Dotson</u>, for respondent.

SUMMARY OPINION

GUY, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions

of section 7463 of the Internal Revenue Code in effect when the petition was

filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by

_____

[1]Unless otherwise indicated, section references are to the Internal Revenue
(continued...)

any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency of $555 in petitioner's Federal income tax for 2009 (year in issue). Petitioner filed a timely petition for redetermination with the Court pursuant to section 6213(a).

Petitioner concedes that he failed to report a taxable distribution of $350 from a retirement account for the year in issue. The only issue remaining for decision is whether petitioner received a taxable distribution of $2,277.95 as reported by New York Life Insurance Co. (NY Life) on Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts, the supplemental stipulation of facts, and the accompanying exhibits are incorporated herein by this reference. At the time the petition was filed, petitioner resided in Texas.

---

[1](...continued)
Code (Code), as amended and in effect for 2009, and Rule references are to the Tax Court Rules of Practice and Procedure.

On July 1, 1958, petitioner purchased a "Thirty Payment Life" insurance policy from NY Life. The policy required petitioner to make quarterly premium payments of $18.05 for 30 years and provided a basic death benefit of $2,500. The policy identified petitioner as the insured and his wife as the primary beneficiary.

Under the terms of the policy, if NY Life had a divisible surplus, petitioner was entitled to a fractional share of the surplus in the form of an annual dividend. The policy provided that petitioner could direct NY Life to (1) pay dividends directly to him in cash, (2) allow dividends to accumulate interest at not less than 2% per annum, (3) apply dividends to the payment of any premium due, or (4) apply dividends to purchase paid-up additional insurance. Petitioner normally directed NY Life to pay annual dividends to him by check, although on one or two occasions he directed that dividends be applied to pay premiums due on his policy.

In April 1988 petitioner received a letter from NY Life stating that his policy would be fully paid up as of July 1, 1988. The letter further stated that he was no longer required to make premium payments, his insurance protection would remain fully in force, and he would continue to participate in NY Life dividends.

Petitioner's annual policy statement for the one-year period ending July 1, 2005, indicated that the death benefit at that time was $2,582.66, the cash value of the policy was $2,230.16, and petitioner was owed a dividend of $62.85.

NY Life provided the parties with a schedule listing annual dividends paid to petitioner from 1987 to 2008. The annual dividends, which totaled approximately $1,900, fluctuated from year to year and ranged from a low of $56.51 to a high of $119.95. Although NY Life was unable to produce records of the dividends paid to petitioner before 1987, petitioner does not dispute that he received total dividends of $2,294.88 over the life of the policy. Petitioner did not recall including the annual dividends in taxable income when they were paid to him, and there is no evidence that NY Life issued any Forms 1099 that would have prompted him to do so.

In 2009 petitioner surrendered his policy to NY Life, and the company sent him a check for $2,294.88. NY Life subsequently issued a Form 1099-R reporting that petitioner received a gross distribution of $2,294.88 and designating $2,277.95 of that amount as taxable income. NY Life calculated petitioner's taxable income as follows:

| | |
|---|---|
| Cash value as of 2/4/09 | $2,210.45 |
| Dividend deposits | 16.61 |
| Termination dividend | 67.50 |
| Dividend interest | .32 |
| Total | 2,294.88 |
| Gain | 2,277.95 |

NY Life subtracted dividend deposits of $16.61 and dividend interest of 32 cents from the total distribution of $2,294.88 to arrive at taxable income of $2,277.95.

Petitioner filed a Form 1040, U.S. Individual Income Tax Return, for the year in issue, but he did not include any of the income reported by NY Life on Form 1099-R. As indicated, respondent determined that petitioner is required to include the $2,277.95 reported by NY Life in his gross income. Petitioner disputes respondent's determination.

## Discussion

As a general rule, the Commissioner's determination of a taxpayer's liability in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioner does not contend that the burden of proof should shift to respondent under section 6201(d) or 7491(a). In any event, given that resolution of this case turns on the preponderance of the evidence, we conclude

that the allocation of the burden of proof is immaterial.  See Martin Ice Cream Co. v. Commissioner, 110 T.C. 189, 210 n.16 (1998).

The term "gross income" is broadly defined in the Code to include all income from whatever source derived.  Sec. 61(a).  In the present case, we look to section 72 and related regulations, which prescribe detailed rules governing recognition of income in connection with the surrender of a life insurance policy.

In general, any amount received upon the surrender of a life insurance contract which is not received as an annuity is gross income to the extent that it exceeds the investment in the contract.  Sec. 72(e)(1)(A), (5)(A), (C); Brown v. Commissioner, 693 F.3d 765, 768 (7th Cir. 2012), aff'g T.C. Memo. 2011-83; Sanders v. Commissioner, T.C. Memo. 2010-279; sec. 1.72-11(d), Income Tax Regs.  Section 72(e)(6) defines "investment in the contract" as of any date as the aggregate amount of premiums or other consideration paid for the contract before that date, minus the aggregate amount received under the contract before that date, to the extent that such amount was excludable from gross income.

To determine the amount of petitioner's investment in the NY Life policy, we begin with the premiums that he paid.  NY Life concluded that petitioner had

paid total premiums of $2,294.88, and he does not dispute that amount.[2]  We also know that petitioner received dividends from NY Life totaling $2,294.88 over the life of the contract.  The question that arises in connection with determining petitioner's investment in the contract is the amount of dividends excludable from his gross income when paid to him.  If all of the dividends were excludable from income, as respondent contends, petitioner's  investment in the contract at the time it was surrendered equaled zero because the premiums that he had paid were wholly offset by the dividends that he received.

Although petitioner did not include the dividends in taxable income when they were paid to him, he now maintains that they were not excludable from his gross income and asserts that they cannot be taken into account at this time in computing his investment in the insurance policy.  Specifically, he contends that the normal three-year period of limitations prescribed in section 6501 bars the assessment of any deficiency attributable to the NY Life dividends.  As explained in detail below, petitioner's reliance on the period of limitations is misplaced.

_____

[2]We note that if petitioner paid a quarterly premium of $18.05 for 30 years, the total premiums paid would equal $2,166.  There is no explanation in the record for the additional $128.88 reflected in NY Life's calculations.  We also note, however, that the 2005 annual policy statement indicated that the death benefit under the policy at that time was $2,582.66, in contrast to the $2,500 death benefit identified in the policy itself, suggesting that petitioner may have paid for a small amount of additional insurance along the way.

Section 72(e)(1)(B) provides the general rule that any amount received in the nature of a dividend shall be treated as an amount not received as an annuity. Section 72(e)(5)(C) in turn provides in relevant part that "any amount not received as an annuity" (e.g., a dividend payment) which is received under a life insurance contract shall be included in gross income, but only to the extent that it exceeds the investment in the contract.[3] In conjunction with the foregoing, section 1.72-11(b)(1), Income Tax Regs., provides:

> If dividends (or payments in the nature of dividends or a return of premiums or other consideration) are received under a contract to which section 72 applies and such payments are received before the annuity starting date or before the date on which an amount is first received as an annuity, whichever is the later, such payments are includible in the gross income of the recipient only to the extent that they, taken together with all previous payments received under the contract which were excludable from the gross income of the recipient under the applicable income tax law, exceed the aggregate of premiums or other consideration paid or deemed to have been paid by the recipient. * * *

Section 1.72-11(b)(1), Income Tax Regs., is applicable in respect of the dividends that NY Life paid to petitioner because he surrendered his insurance policy and no amount was ever paid as an annuity. See sec. 72(c)(4) (defining the annuity starting date); Brown v. Commissioner, T.C. Memo. 2011-83.

---

[3]Sec. 72(e)(5)(E)(ii) provides that subsection (e)(5) of sec. 72 applies to any amount received under a contract on its complete surrender, redemption, or maturity.

There is no evidence that, at any point, the dividends that petitioner received, viewed singly or in the aggregate, ever exceeded the aggregate of the premiums that he had paid on the insurance policy. The parties agree that petitioner stopped paying premiums in 1987, but he continued to receive annual dividends until he surrendered the policy in 2009. Between 1987 and 2008 petitioner received total dividends of approximately $1,900, none of which exceeded $120 in a single year. Significantly, it was not until 2009, however, that the aggregate of the dividends paid under the policy equaled the aggregate policy premiums, all of which leads to the inescapable conclusion that the dividends paid to petitioner up to the time he surrendered the policy were excludable from gross income in accordance with section 72(e)(5)(C) and section 1.72-11(b)(1), Income Tax Regs. Because the annual dividends were excludable from petitioner's income when he received them, his argument that respondent is barred by the period of limitations from assessing the deficiency is simply incorrect.

The record reflects that, at the time he surrendered his insurance contract to NY Life, the aggregate premiums that petitioner had paid on the policy equaled the aggregate dividends paid to him. Consequently, petitioner's investment in the contract was zero, see sec. 72(e)(6), and NY Life correctly reported that, of the $2,294.88 paid to him upon the surrender of the insurance policy, $2,277.95

constituted taxable income, <u>see</u> sec. 72(e)(1)(A), (5)(A), (C).  Consistent with the foregoing, the income tax deficiency that respondent determined is sustained.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.